RECIEVED
2022 FEB 24 AM 11:14
CLERK
U.S. DISTRICT COURT

FILED
2022 FEB 25 PM 3:09
CLERK
U.S. DISTRICT COURT

**Ana Maria Ravines de Schur**
**3848 S West Temple**
**P.O. Box 50**
**Salt Lake City**
**UT, 84115-1289**
**Cell: 916-801-4756**
**amravinworks@gmail.com**

Case: 2:22−cv−00130
Assigned To : Barlow, David
Referral Judge: Oberg, Daphne A.
Assign. Date : 2/24/2022
Description: Ravines de Schur v State
of Utah et al

# In The United States District Court
# For the District of Utah

| | |
|---|---|
| **Ana Maria Ravines de Schur** | |
| | |
| **Plaintiff,** | **CASE Nr.: <u>not yet assigned</u>** |
| | |
| **VS** | |
| | |
| **The State of Utah** | |
| **Housing Authority of Salt Lake City** | |
| **REGION US HOUSING AND URBAN** | **Judge(s) : <u>not yet assigned</u>** |
| **DEVELOPMENT** | |
| **STATE OF UTAH CONTRACTORS TO** | |
| **HUMAN SERVICES FEDERAL** | |
| **FUNDING (DWS and others.)** | |
| | |
| **Defendants.** | |

The plaintiff alleges as follows:

1. Plaintiff calls upon the court to enforce 8 U.S. Code § 1522 authorization of programs for domestic resettlement of and assistance to refugees. Plaintiff calls upon the court to enforce 22 U.S. Code § 6401 for the right to freedom of

religion and protection against religious persecution in the United States as a fundamental law that is being violated in the State of Utah by State of Utah Contractors to the U.S. Federal Government.

2. Plaintiff calls for her refugee rights as stipulated by the Committee on the Elimination of Racial Discrimination, in its general recommendation N° 30 (2004) on non-citizens, and the Committee on Economic, Social and Cultural Rights, in its general comment N° 14 (2000) on the right to the highest attainable standard of health, both stress that States parties should respect the right of non-citizens to an adequate standard of physical and mental health by, inter alia, refraining from denying or limiting their access to preventive, curative and palliative health services. The Special Rapporteur on Health has also stressed that sick asylum-seekers or undocumented persons, as some of the most vulnerable persons within a population, should not be denied their human right to medical care.

3. Plaintiff has provided evidence in an alternative case of refugee resettlement fraud, discrimination that adds to the notion of persecution and torture, omission of health provisions by Medicaid supported health agencies in the State of Utah, continuing hate crimes covered up by the accused interagencies in violation of refugee's rights to Separation of Church and State. The criminal activity has been perpetrated by State of Utah Contractors to the Federal Government servicing health and human services, refugee services programs and employment agents in charge of refugees' support.

4. Plaintiff demands social and economic restitution, as well as an organized refugee resettlement to a safer area of the United States, where the refugee' religion will not play any substantial role to worsen her experience with systemic discrimination, as it is demonstrated in the State of Utah.

**JURISDICTION AND VENUE**

5.   This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, 15 U.S.C. § 1691e(h). Venue is proper in this district under 28 U.S.C. § 1391(b). The actions and omissions giving rise to the allegations occurred in the State of Utah.

6.   The Plaintiff Ana Maria Ravines de Schur is a citizen of Germany living in the United States under political asylum,   and the total restitution demanded is larger than $75,000.00.

**FACTUAL ALLEGATIONS**

The office of PATTY SHELDON at the Salt Lake City Housing Authority responsible for Section 8 Vouchers continues not responding to inquiries sent by the Plaintiff in searching for solutions to the socio-economic displacement that her family faces in the State of Utah since quite long for reasons that will be explained in this letter.

The Plaintiff has not yet held a friendly conversation with the said official at the Salt Lake City Housing authority since the Plaintiff relocated out of the City of Provo in July 2020 as a consequence of very disturbing activities by public offices in violation of refugee resettlement standards and services.

Contrary to all guidelines explained to the Plaintiff by HUD Housing Counseling agencies from out of state, the office of Ms. Sheldon has kept a visibly hostile demeanor towards the Plaintiff. In her communications with the Plaintiff Officer Sheldon has reported in writing that she does not want to talk to the Plaintiff (her client) on the phone. No incidents or provocations were produced by the Plaintiff against the official. Such an unfounded refusal to provide customer's service to a client on the phone is an act of discrimination that the Plaintiff did not provoke.

With no real person to talk to about the benefits and programs withheld in the HUD Programs in support of persons in her family's situation, the Plaintiff is undergoing an interminable cycle of misleading instructions given in writing by Patty Sheldon that lead to time waste and to continued missing resources to support the family into a more realistic access to housing opportunities for the family of refugees to find safe haven and the fulfillment of her hard work towards financial independence and the pursuit of happiness.  The Plaintiff continues suffering discrimination and discriminatory practices by officials working in contractual positions responding to funded programs of the federal government in the State of Utah, such as the Housing Authority's postures described herewith.  When these discriminatory activities have been repeated so many times by so many public servicing offices, the Plaintiff can only conclude that her family is being given a differentiated discriminatory treatment that adds to the notion of persecution in the State of Utah, a state that is known for nestling discrimination against people of color.

## THE STATE OF UTAH HISTORY OF RACIST IDEOLOGY CAUSES DISTRUST AND ANXIETY IN THE FAMILY OF REFUGEES FROM GERMANY

Under legitimate arguments as a survivor of racist persecution in her country of citizenship, the Plaintiff, who is a person "of color" is suspicious of the honesty and integrity of the State of Utah's public officials because of the history of the State of Utah.

The Plaintiff seeks equal access to opportunity to resume productive activities and healing solutions for herself and her family in a location outside of the conflicting scene constituted by the Utah agencies that violated her family's rights and away from the culture, a neutral location where her "negritude" won't be seen as a cause for the inherent discrimination against skin color that has been nestled in the State of Utah for a long period in their history. The history of the State of Utah deems it unrealistic for the Plaintiff and her family to feel safe after having received political asylum from Germany in the United States.

The Plaintiff is aware of the fact that in spite of the religious leaders in the State of Utah having mandated that no further discrimination shall be practiced against people of color, in reality such social transformations do not happen in a decade or two, but people who have been indoctrinated for so long in ideologies of Mystical White Supremacy such as the dogmas instructed by the leaders in the mainstream of Germanic phenotypes carefully bred to exert geopolitical control of the area will not change their views and attitudes towards people of color even in a hundred years,

because these ideologies are all that has influenced the peoples' development while they were forbidden to access cultural influences pointing in other directions.

The Plaintiff has explained in numerous circumstances to state and Federal agencies that the State of Utah contains a heavily racist history of mystical white supremacy against people of color.  Some of the people she meets had never met a person of color before her.  It is complicated to admit that a large percentage of individuals in charge of managerial and directorial positions in the administration of public services in the State of Utah have been raised in the particularly discriminatory belief system that declares THE NEGRO as a less valuable human among all other races in the society. This preceptural conviction has been supported and nestled through religious arguments that chastised THE NEGRO as having sinned in an alleged pre-existence before he was born in this life on Earth.

Mormonism's Negro Doctrine:
An Historical Overview*

Lester E. Bush Jr.

"So long as we have no special rule in the Church, as to people of color, let prudence guide, and while they, as well as we, are in the hands of a merciful God, we say, Shun every appearance of evil."
—W.W. Phelps, 1833

The NEGRO DOCTRINE is said to be disavowed by the religion of over 50 percent of public officials who consider the teachings of their leaders more important than the rule of law in the United States. These individuals organize their success in life by holding strong affinity groups that are based upon their unconditional loyalty to the group that keeps them in power. In the State of Utah you will not find a political position occupied by non-members of the religion that dominates in the status quo. This may be, because some of those positions are elected, and the masses elect their own to rule. But, once in power, these groups act like predators in that the central organization that they not too secretly serve, demands their full loyalty to afford them the opportunity to obtain more power, control and status.  From that position of status granted to them by the status quo that erects them into power, these individuals receive the convenient base from where they can prey on others for financial gain while their membership in the regulating organization gives them the legitimacy that they need to continue enjoying the "success" that they have been promised for "obeying" the rule of the status quo. At the same time, there are no supervisory regulators in function that should make sure that the activities of such people in power are followed accordingly and are not influenced by the pervasive interests of the "matrix" that regulates the "normality" of the mainly white supremacist beehive.

These organizations often seek to handle their problems in privacy as to avoid bad publicity, so they become reluctant to report even when gross criminal misconduct on the part of the abusive elites arises among them. And this is how ethnic minorities who arrive to the locality ignoring that these conditions are in place, easily fall prey to the

activities of the organized insiders who have been doing their businesses in this same

way since the organization took control of the state over 187 years ago.

Knowing that there is a religious freedom act protecting people who are free to believe

in whatever activities they may choose to participate in, the Plaintiff is convinced that no

religious freedom act authorizes any institution to conceal acts of ideological racism

based on "inspirations" by leaders who argued being speaking in the name of God while

declaring people of color to be less respectable, because of the color of their skin. In

this way, part of the history of the Mormons in the State of Utah does not qualify to be

considered as granting the rights and liberties that the religious freedom act manifests.

The insidious indoctrination of the population into racist ideology is not an aspect of the

religious freedom act, but it constitutes a negative ingredient that has continued to taint

the purity of the religion with collective acts by true believers that fall off the radar in

xenophobic and hate activities that should be scrutinized as human groups practicing

Criminal Apartheid.

Claiming racism as part of a religious freedom right is not procedural at any court of law

that respects the tenets that grant equal rights to people of any colors.  On the contrary,

the existence of so many preceptural mandates given to the predominantly Germanic

white people who were nestled as the chosen class in the State of Utah teaching them

that THE NEGRO is less blessed by God, is a violation that qualifies as CRIME OF

APARTHEID. The NEGRO DOCTRINE incepted in the State of Utah is against all

national and international laws. If one sees it as Criminal Apartheid or as an act in

support of Indivious Discrimination, the Mormons have been teaching mystical racism that is not justifiable under any National or international laws. All men are equal in front of the law, but not for this power group.

Apartheid is a Crime Against Humanity that does not fall under statuses of limitations, because it continues to harm those who are different and ignorant of the undercurrent streams of Mystical White Supremacy taught among certain groups in the United States since the prohibition of slavery.

Such forms of criminal activity cannot be brought to justice in a "system" in which a nestled plutocracy of white supremacists continues to hold on to their faith in a religion that exalts Whiteness. Even in the event that the members leave the cult, they will continue supporting the economic system that keeps them in control, for survival reasons of self-preservation. In this process, the elite or ruling class makes sure that people like the Plaintiff or her children will never be allowed to access prosperity, because if they do, others in the same circumstances would do the same, and the elite that controls the geopolitical system would lose power. This is the reason why there are so many underprivileged blacks and so many privileged whites in the State of Utah.

It is the Plaintiff's observation and experience that in the State of Utah any allegations calling for the State authorities to investigate corruption are quietly toned down into non responses. In too many instances, the Plaintiff has been denied investigative proceedings in spite of her presentation of credible material evidence proving her

claims. The[ "system" in the State of Utah tends to omit responses or fails to investigate when investigation is required.  Such is not a coincidence, but the result of almost two centuries in a state that discriminates against ethnic minorities by dint of shared ideological convictions by the ruling class that are based on racial discrimination through nepotism and self preservation that permeates throughout the rulinginstitutions.

The Plaintiff and her family are refugees of color in a state that predominates for discriminating against ethnic minorities that have been interpreted for a long time as less valuable than white people.

**Human trafficking victims in the State of Utah do not find legal representation or mental health support.**

The State of Utah's police response is very biased against those who are abused when the perpetrators belong to the Whites' status quo and the abused are persons "of color." The public officials are allowed to decide against ethnic minorities in violation of judiciary standards.  No supervisory ethical commissions are actively responding to the inquiries of those who are harmed. The plaintiff has already complained against the violent language she was exposed to by a Police Officer in the Unified Police Department for exposing one of her family members' case of sex and labor trafficking by two white women in the area (See case Nr. 2:22-CV-00061). The immediate reaction of the State of Utah's institutions at the complaints raised by people of color is neurotically angry and silencing, because they cannot afford the freedom of giving equal access to the remedies of justice to those who are harmed by the vitriolic hate against skin color

that has been nestled in the culture by the founders in ways that today can be defined as successful in the process of the continuation of white power.

The Utah State courts continue to benefit the status quo, in spite of their proven unethical or criminal behavior.  It has been publicly admitted that Professional Ethics Commissions in the State of Utah fail to investigate.

From the four branches offering guarantees of ethical procedures to the public in Utah, none of the four listed in Utah.Gov seems to be in good function.



Those pages mentioned in the screenshot shared above offer phone numbers that are not in service.  In the particular Plaintiff's experience when trying to contact the phone number of the Judicial Conduct Commission, there are no returned phone calls and all the commission fails to respond in writing.

It is questionable that these ethical commissions are really interested in following Constituents' information on judicial conduct violations, or if the agencies are simply set in place to impede those who are affected from accessing equality in the failed process of delivering judiciary remedies that should benefit all petitioners in the State of Utah, without prejudice.

The Independent Executive Branch Ethic Commission reports very low numbers in statistical information for ethical complaints filed with the Commission during the years 2019 and 2020.  These "complaints" registered in the report do not seem to be supported by any reasonable filing process offered to the public, with no working numbers for their offices, no calls being returned and no responses to written grievances in what comes through as a total omission of services blatantly misrepresented for the disadvantage of those who are being harmed. The lowly populated information shared with the public for this matter appears to be another ingredient of the negative conditions offered to the public in the State of Utah when seeking ethical standards guaranteed by the Constitution.

Below are two pieces of information that the Plaintiff has gathered in a research for data related to this problem:

## 2020 Annual Summary Data Report (EBEC) (Final)

Independent Executive Branch Ethics Commission
2020 Annual Summary Data Report
Page 4 of 5

## Statistical Information for Ethical Complaints

The following table summarizes statistical information for ethical complaints filed with the Commission during calendar year 2020:

| 2020 Complaints | | | | |
|---|---|---|---|---|
| Number of Complaints Carried Forward from 2019 | Number of Complaints Received in 2020 | Number of Executives in Complaint(s) | Number of Reviews Completed | Number of Complaints Carried into 2021 |
| 1 | 0 | 1 | 0 | 1 |

In 2020, the Ethics Commission reviewed one complaint. This complaint was carried forward from 2019. Consideration of this complaint is ongoing and has been carried into calendar year 2021 as the result of motions filed by the parties and their mutual requests for additional time.

For the information of the Legislative Management Committee, the Ethics Commission received multiple filings and communications during 2020 that did not meet the statutory requirements to be considered by the Ethics Commission as "complaints." These filings and communications required a full review and analysis of the statutory requirements by the executive director to determine their sufficiency (or lack thereof) and communication by the executive director with the filing party to note their insufficiency and provide assistance on statutory filing requirements.



# Utah ethics commission received 'multiple' concerns in 2020, didn't investigate any cases

by Jim Spiewak, KUTV   |   Wednesday, February 3rd 2021

*Investigating people in the highest levels of government over concerns of unethical or illegal behavior has become tougher through the years. (KUTV)*

SALT LAKE CITY (KUTV) — Investigating people in the highest levels of government over concerns of unethical or illegal behavior has become tougher through the years.

**Plaintiff requests Federal Investigation and Intervention to conclude in helping her family to resettle into a more diversified area of the United States where they may find equality and justice, because of the highly dangerous circumstances under which her family is being framed to suffer by a state administration that covers up its disservice to those who are harmed by the existing racist biases in a system that seems to have no interest in giving equal access to the tools of Justice for all without prejudice.**

**Gerrymandering** is another fundamental part of the beneficial construction that supports white people in public office in the State of Utah against the public's equal rights to access justice. The court may note that two of the recent AG's in the State of Utah have been in and out of jail for charges of corruption.

The existence of the Plaintiff's complaints is an undesired focus of attention to problems in the State of Utah affecting refugees and immigrants, an argument that those who benefit from the advantageous financial sources of federal funding are not willing to expose under daylight, for obvious reasons.

The problem remains for the Plaintiff at how to find out who else is left in the State of Utah to represent a minority's rights properly, given the existence of such low quality and fully disrespectful manners and idleness in those who are paid by the United States funding system to provide equal access for all.

**The Plaintiff has raised allegations on discrimination that the office of PATTY SHELDON, Director of the Section Eight Program at the Salt Lake City Housing Authority, is not even responding for. Calls leaving recorded messages following up to the Plaintiff's written inquiries for housing adjustments and relocation out of state are seldom responded to by Ms. Sheldon. Her supervisor Jackie Rojas is neither a respondent to the inquiries sent by the Plaintiff.  Their omission in providing the services "free of prejudice" that any positive customers' service agency would guarantee to a client is perceived as dire acts of discrimination.**

The Plaintiff has demonstrably too many other instances in which the neutrality of services to be provided through public administrative proceedings has been corrupted by individuals working in public servicing offices of the state of Utah. The Plaintiff's allegations are based on well-founded evidence that these public servants have not been able to respond in a transparent manner while causing only further pain and suffering to the claimant and her family members.

The Plaintiff describes the publicly administrative system in the State of Utah as factually broken, in which the real victims are systemically left penniless under unethical measures that lead to the invariable outcome of continuous abuse of federal resources by officials in charge who contribute to the disadvantage of those who are not being given the right to be treated as an equal part of the Utah status quo. The Plaintiff concludes that under the said circumstances and illegal proceedings, the integration of people of color becomes impossible.

This case conforms a full cycle of systemic refusal to serve; and the injustice should be turned around by the Federal Government in a demand to those who are responsible to show how many other times have they abused, wrongly sentenced, omitted rights and protected the abusers against other ethnic minorities that are systematically denied equal access to Justice, to human services and to Healing and Integration in Utah, for reasons that are highly questionable, if it should be true that all persons are equal in front of the law. But, above all, a measure of safety shall be set in place as to secure the Plaintiff and her family of the promises granted by their political asylum status in the United States.

The Plaintiff and their family have not broken any law by immigrating to the State of Utah. Had they but known that the State of Utah hides such a horrendous history of white supremacy and racist ideology against skin color, the Plaintiff would have never agreed to subject her family to the abuses that they had to discover on a trial and error experience until they were able to find out what truths of horrendously racist proportions are behind the smiley faces of the American missionaries that invited the Plaintiff to come to Utah with small children.

**Plaintiff and one of her sons is a Survivor of Sex and Labor Trafficking.**

The existence of the Human Trafficking ingredient in the experience of two of the four family members has been methodically suppressed through the insidious omissions by State of Utah contractors that reclassified the Plaintiff's grievances as "Spam" in the

absence of protections in her favor while the "system" continued to abuse the provisions set up by the federal government in this family's search for safe haven as refugees.

## HEALTH COVERAGE TO BE PROVIDED

The Plaintiff reminds this court that her family is in dire need of professional dental services. The damages caused by these State of Utah malicious officials who hindered her family's access to the family's pension from Germany (See case Nr. 2:22-CV-00054) that would have provided for health and dental insurances now can only be repaired through a claim of $25,000.00 Dollars for each of the four family members in their need for complex dentistry to be performed.

Although the officials in charge of the Plaintiff's family records point to their training in Human Services, their curriculums show no training in Human Trafficking or in advocating for minorities or refugees as victims belonging to a different ethnicity seeking equal access to justice and services in the State of Utah. The Plaintiff is under the impression that gerrymandering is a strong element in the preselection and uplifting of political and administrative candidates to rule in the State of Utah, disregarding their total lack of empathy for those who are not of the same tribe.

A reasonable DEMAND FOR QUALIFICATION is relevant to the driving need for an adjustment in provision of housing costs paid by the State of Utah and its associates in a different state, where the Plaintiff and her family may find healing and the realization of their god-given individual gifts and abilities as they brought them from Germany to the

freedom that they never found in the United States because of the conditions described in the State of Utah.

The system in the State of Utah has deprived the Plaintiff's family of entitlements that are part of the constitutional rights that were granted to them with their political asylum decision. Because the system in the State of Utah has been so programmatically preset to deny equal access to this family of color, the family is currently in a condition that demands immediate intervention by Federal Investigation and resources.  Here some of the harms that must be immediately handled:

- All family members are suffering from Complex PTSD.

- There is no consistent trauma therapy open to the family in the State of Utah under the very downtrodden circumstances that have been produced by the lack of responses and denial of basic services since they came to the State.

- The Medicaid-based mental health and medical supportive services have been biased by the negative intervention of case managers and professional specialists who instead of helping only contributed to suppressing the problems towards the cleansing of their own organizational records-keeping for the subsequent funding period.

- The plaintiff has lived for over two years without any income, without any resources to stand up again while the Utah Department of Workforce Services and the related non profit organizations and state contracting human service providers kept looking in the other direction after the

Plaintiff kept reporting highly questionable circumstances that were fabricated by the local state of Utah contractors to federally funded programs against her family.

- From January 2020 until this day the Plaintiff is surviving without any source of income, producing complex documentation such as the current demand to the United States District Court for the District of Utah, to proceed with regulatory measures that may allow her family to find safe haven outside of the described conditions in the State of Utah. All these documentation efforts only serve to prove the veracity of the Plaintiff's allegations, but do not contribute in any way to producing a safer and more productive geopolitical situation where her family may survive without fear in the United States. The local contractors in State of Utah a public offices simply continue to endanger the conditions of the family, possibly hoping to tire them up and force them to run away without any provisions met and fulfilled for their safety.

- In a conversation last week with the "Constituents' Service Official" at the office of U.S. Senator Mike Lee, Jessica Christopher told Plaintiff that she is free to leave, take her belongings and just go. This information would be agreeable if the Plaintiff would count with the resources to realize that challenge. But, because the Plaintiff has been set up to loses and destitution caused by the activities of state contractors who created her damages, it is urgently necessary that the situation be handled appropriately and the support be given to the Plaintiff's family to relocate

safely into safer haven without having to expose themselves to further risks, in particular when the crisis has been created by state of Utah contractors.

- The Plaintiff has also suffered yelling and screaming at her by the assistant in charge of "Constituents' Services" at the office of US Senator Mike Lee, when in 2015 the said service provider accused the Plaintiff of being guilty of her own misery for "having come to the State of Utah." At no point in her description of services did Jessica Christopher recognize that the State of Utah is a part of the United States and as such, the state contractors are supposed to comply with federal regulations for the equal distribution of services also for those who are "different."

- The Plaintiff has continued to face discrimination also in employment practices with State of Utah Contractors to the US Government. Further information can be made available but it may not be required for his intervention.

- Two members of the Plaintiff's family lost employment in the middle of the pandemic, and they are still not seeing any unemployment support by the same Utah Department of Workforce Services that reclassified the Plaintiff's information as 'Spam' leaving her without any income right at the beginning of the CoVid19 pandemic, after a short period following her relocation back to the State of Utah in 2019.

There are too many conflicts of interests present in the State of Utah culture that the Plaintiff and family are surviving in the State of Utah. The system corrupts itself in that private interests become coercive to all platforms of public administration against those who are different. The Plaintiff and her family are being treated under conscious and unconscious biases that exist in the State of Utah as a historical consequence of the mystical racist indoctrination that has been passed on against those who are different; and the perpetrators are not even aware that they are being guilty of perpetuation the crime of apartheid.

*An individual with conscious bias is likely to be explicit with their beliefs and attitudes and behave with clear intent. The biased attitudes and behaviors are processed at a conscious level. A conscious bias that is extreme is usually characterized by negative behavior, such as physical or verbal harassment.*

The existing biases against people of color in the state of Utah cannot be treated as unconscious, because of the long historical reference to doctrinal precepts that the founders of this state have expressively succeeded at educating in the population. The NEGRO DOCTRINE may have been "officially" eliminated by the headquarters of the dominating ideology, but how can the generations of systematically inbred Germanic phenotypes working together to keep the power of the state administration always in the same hands, stop believing in the prejudice that they have been faithfully indoctrinated in against people of color for so long. The Plaintiff can situate herself in the side of those who oppress them. From their perspective, suppressing the rights of the Plaintiff and

her family seems to be an act of self preservation, but such an act is still in violation of federal laws for the equal distribution of federal resources to all who are different, particularly in cultures and societies where the rule has remained to support the humanities of White People only for so long.

The coercive bias is not going to disappear from the Plaintiff's family's lifetime anytime soon if they commit the error of trying to find equality in the State of Utah. The Plaintiff's family members believe that they came to the United States in search of The Pursuit of Happiness and not to be permanently discriminated against, abused and persecuted by a group that has a long history of human rights violations against people of color.

The Plaintiff asks this Honorable Court to help her family to find a safe way out of the system that undermined and continues to undermine the well being and higher standards that should have been guaranteed to her family the moment they were granted political asylum in the United States.

In the Constitution of the United States there is a distinct reference to the Pursuit of Happiness. The state of Utah agencies involved in this fiasco have been working persistently to the opposite, in disadvantage of the Plaintiff's family.

The Plaintiff is not a lawyer and cannot hint to this court on how to guide the people who continue to oppress her family in the State of Utah to their obligation to hold to the Rule Of Law by treating her family with the same consideration and respect that these

individual state contractors grant to members of their culture that have been part of the "chosen" population since generations.

The Plaintiff has tried for a long time to put a shroud over the mirror and to continue fighting to find equality and justice in the State of Utah without having to constantly be pointing fingers on who is doing things wrong. But, the type of abuses that the family continues to face have left them with the feeling that they are in the wrong location and for this reason Plaintiff is asking this court to help her family to meet immediate arrangements to secure a home elsewhere, in a way that may allow all four members of this destitute family to start living instead of surviving as badly as they have been in the State of Utah for all the reasons exposed in this letter and for the arguments contained beyond through parallel federal accusations submitted under different case numbers.

The Plaintiff had a phone conversation with Jessica Christopher, Constituent's Services Specialist at the office of U.S. Senator Mike Lee, last week. In the conversation, Plaintiff expressed her discomfort at so many violations having proceeded against her family for too long in the State of Utah. Plaintiff reported that they need help to resettle elsewhere to find healing and the right to live in peace. Ms. Christopher responded in a very dry voice, "You are responsible to move on your own!" The same Constituent's Service Representative told Plaintiff in 2015 on a phone call that the acts of discrimination that the family is facing were her own fault, for having come to the state of Utah with her children after they were granted political asylum in the United States. Senator Lee is a member of the United States Judiciary Committee.  The plaintiff cannot understand why

these discrepancies continue to be supported against her family rights in the State of Utah.

Being no US citizens living under political asylum in a system that is as repressive and retaliatory as the State of Utah demonstrates to be, makes it quite painful for the Plaintiff to explain why she and her family are currently penniless, why they never received their rightly deserved child support and alimony from Germany after the Honorary Consul of Germany in Utah opted for **"not talking to the Plaintiff as a lawyer or as a German Consul, but… rather as a Bishop of the LDS Church."** The incident was a precedential violation of the separation of church and state against the Constitutional Rights of the Plaintiff's family.  By doing what he did, the German Honorary Consul set up clear precedents that the Plaintiff's and her children's life in Utah would be plagued by discriminatory practices based on that generalized perception that those who rule are allowed to act above the Rule Of Law, as they choose to act according to the interests of the elite that is in control under tenets of racism that are unacceptable to any federal level of public administration.

The Plaintiff has survived without unemployment benefits, and no CoVid19 support since she lost her job in Provo in January 2020.  Plaintiff is without mental health support all across this complicated process. Plaintiff and her sons are in need of urgent dental repairs. Medicaid does not offer solutions in the State of Utah. Plaintiff and her family can access dental repairs in other states.

In Utah, people of color suffer violent retaliatory activities by state contractors who do not seem to find an end to their abusive activities, and the complaints by those who are harmed are silently brought to a space of oblivion, that in combination with the abuses that those who are harmed suffer, derive in life crises that in many cases cannot be repaired. This condition is exhausting and for this reason Plaintiff demands that the federal government intervenes to help her family out of the prejudiced area into a safer location that may be determined.

## **PLAINTIFF DEMANDS FOR REPARATIONS AND PRAYER FOR RELIEF**

Plaintiff asks the court to order these respondents to pay for the following reparations in restitution over hardships and duress and PTSD that they have caused to all parties associated. The demands are as follows:

1. Ana Maria Ravines de Schur suffers from PTSD after surviving not only the traumas that led her family to obtain political asylum in the United States from Germany, but she is being re-traumatized by the abuses produced by the Utah State Contractors mentioned above, whose actions only worsen the stress and duress put on her refugee status over the past years.

2. Plaintiff demands that arrangements be made to enforce HUD access of the whole family to a rent-to-own housing solution that may allow all four members of the refugee family to exert work-at-home businesses. Plaintiff is demanding the payment of rental costs for a home with enough living and working space, and enough garage space that may allow to install a ceramic kiln with which the

Plaintiff intends to produce her own ceramic and bronze products for sale at targeted areas of the United States, Canada, Mexico and the European Union.

3.  A sample home with five bedrooms in Manteca, California, is provided herewith:







4. The costs for rentals listed above are not much different than the authorized HUD

   Section 8 Housing vouchers for four persons, as seen in the following chart by

the San Joaquin County Housing Authority:



5. The reason why the Plaintiff is seeking to obtain one additional bedroom supported by the HUD Section Eight Program is that she is a skilled producer of figurines in clay that will eventually be cast to bronze. The NEA (National Endowment for the Arts) programs that she has in mind for applying are more generous in the State of California than they are in the State of Utah. The reason is as follows: The State of California prizes art based on standards of productivity

and skills brought up by the creative applicants through supportive programs to allow individuals who demonstrate exceptional qualities to progress and succeed.

6.  The State of Utah has a different form of evaluating art quality, strongly influenced by the religious background that permeates all areas of the state activities. This can be seen in art events showing "art" representing images of Jesus Christ depicted invariably as a Germanic phenotype. The art schools in the state of Utah are often influenced by this ideological component, that does not allow talented artist women to compete, succeed and progress. Plaintiff needs one extra room to produce the images seen below, to then release them for bronze casting at specialized foundries that turn her products into more expensive articles that find good sales in international marketing opportunities.

7.  The opportunities for artistic progress are asphyxiated in the State of Utah through the art administrators that misrepresent the funding sent by the NEA to the state of Utah, as seen in the "Survivors' Report already shared with this court in a parallel case, as the office of Art and Museums in Utah originally offered grants tovisual artists who would demonstrate exceptionalism in skills and art production through years of professional practice. With this in mind, the Plaintiff applied for the grant. The organization finally misrepresented their grant and instead of giving 3,5 to to 5 thousand dollars of granted funds to those who won, they granted 500 Dollars to anyone who asked. Their mission failed in supporting those artists who struggle to continue producing art and cultural events for the benefit of world culture. The Plaintiff has made additional similar frustrating experiences with the art administrators in the state of Utah in other situations as well.

8.  The following is "Arthur, the Harlequin", a figure that costs the Plaintiff 5 thousand dollars for its production in bronze, made by a foundry. The finished bronze cast

is then prized at a sale price of 25 thousand Dollars. This is why the Plaintiff needs an separate room to produce her individualized and quite delicate works of art:



9. Ana Maria Ravines de Schur, being impoverished by induction through provenly biased acts of State of Utah contractors to the federal government, in the absence of comprehensive Medicaid or Medicare services providing trauma therapy for the poor, is in need of professional trauma therapy and psychological support that Medicaid and Medicare do not provide for her in the State of Utah, because of the reasons explained in the additional Complaints submitted to this honorable Court.

10. It is recommended for the Plaintiff and her family to enter a different culture and location in the United States, into an area where their skin color will not prevent them from accessing equality and inclusion. The burdens of living in Utah under such high levels of prejudice, particularly while knowing the history that is behind the hate against THE NEGRO that has been cultivated in the State of Utah for so long, only function as a revival of old anxieties linked to the racism that they left behind in the United States. They must find safe haven out of the State of Utah and embark in creative efforts to distract their memories from recalls to all the hate and anxiety that they want to leave behind in the State of Utah to never have to deal with it again.

11. The portion for mental health support allotted to Ana Maria Ravines de Schur, totalling $144,000.00 to cover for the next 10 years of therapy needed for Ana Maria Ravines de Schur at the standard rate of one weekly visit of $150 per week must be multiplied times four for each of the members of her family that has been harmed by the abuse and neglect that perpetuates the uncertainty under which the family is being factually extinguished although they have been all along on hold of a legal immigration protected status that should have avoided the suffering that was inflicted by the very agencies in charge of their well being.

12. The Plaintiff demands starting funds to set up her own independent business in the state of California, for the production of bronze ornaments for staircases, ornamental facades, memorable sculptures and other showpieces for office buildings, high-end stores, hotels and restaurants, museums, arts centers, residences and other public and private places.   Financial fund totalling $300,000.00

13. The Plaintiff demands production costs for each of her family members to start an own business in their home location providing diversity of services in the IT

industrial and construction developments. Each family member start fund should cover supplies, materials and a safe cover of costs for the upcoming three to four years. Costs provided for each of her sons at a rate of $200,000.00 each.

14. The Plaintiff and her family members are suffering from COMPLEX PTSD due to existential fears that have been retraumatized by State of Utah agents through activities that included denial of basic rights, threats and intimidation. The Plaintiff requests complex therapy to be provided, that the family may deal with the issues that these organized abusers have continued to produce against her family's geopolitical displacement both mentally and economically.  The Plaintiff is asking for professional health and mental health support covering her family for $ 144,000.00 each for the next 10 years.

15. Multiple violations have affected the plaintiff's family integration as refugees to the United States through perpetration instigated by State of Utah contractors to the Federal Government. These violations are documentable acts of xenophobia, nepotism, corruption, malfeasance, racketeering and most heavily, acts of organized discrimination that adds to the notion of persecution incited by public services actors employed by State of Utah agencies that charge the US Federal Funding for Medicaid services.

16. The Plaintiff demands payment for her refugee family relocation to an agreed location; the transport of her family's belongings is being currently rated at $7,000.00 to $10,000.00.

17. The Plaintiff demands the Respondents to supply for her and her damaged sons personal needs of complex dentistry, totalling $25,000.00 for each family member. This totals $100,000.00 for all.

18. Plaintiff demands that the Respondents pay for a Constitutional Attorney to represent the Plaintiff's family rights  to represent the Diversity of Citizenship Rights for Ana Maria Ravines de Schur and her family, as well as all associated legal fees and related expenses preventively to a sum starting at $40,000.00 that may change after a more detailed conversation with a specialized Constitutional Law Office.  Plaintiff demands the funds in support of a Constitutional Law Office located in a different state, not in the State of Utah, where none of the lawyers she has contacted is able to represent her family for this type of law.

19. As refugees to the United States, the Plaintiff and her family demand the right to garner income also on the work of their own hands, to obtain a measure of security either rendered in full by the product of their own hands, or in complement of government provisions and agencies in response to the family's visible needs in relation to having been granted political asylum and fallen in "the wrong state."

20. The provision for safety has never been respected by the local contractors to the federal government in the State of Utah, and the Plaintiff's family has been abused and discriminated against through numerous demonstrable circumstances that should not have been allowed to continue. In such instances, the agencies that would have been able to offer healing and rectification to the wrongs caused by officials paid to provide support, opted for remaining silent while allowing the family to continue in the programmed decay caused by those in charge of their access to betterment.

21. The Plaintiff's awareness of the US Constitution is the basis to the entitlement that she is requesting this court to consider in the search for healing and restitution.   The Plaintiff has expressed in other cases referenced to this court that it is not her intention to sacrifice her own life or to sacrifice her family to permanent accusatory or demeaning references against any state or governmental parsonages in a locust as lacking of support for Diversity as the State of Utah has proven to be. But, reasonable remedies will need to stick to what will be at the end a safe solution to the Plaintiff's family survival, regardless of the biases that are being documented against the State of Utah aggressors working from public office against this refugee family rights.

22. Even if the State of Utah "system" would allow for corrections to be made in the current chaos created by its contractors to the Federal Agencies, the possibility that their collective acts against the Plaintiff's family would repeat in an undefined future is high. And the possibilities that new state contractors may be assigned who would continue perpetrating such abuses against the family of refugees is high.   And the possibility that the family may collapse in an escalation of rights violated and no further resistance to the abuses in the family members who continue to suffer under the debilitating conditions that the stress has generated is high.

23. For all the reasons exposed above, the Plaintiff demands that the Federal Government intervenes to produce the solutions that may allow her family to resettle safely in a safer area of the United States. After having made

friendlier personal experiences as a refugee to the United States, the State of California is hereby considered a better possible port of arrival for the Plaintiff's family to build upon a truer safe haven where their diversity won't be persecuted.

Respectfully submitted:

February 24, 2022

_____

Ana Maria Ravines de Schur
**3848 S West Temple**
**P.O. Box 50**
**Salt Lake City**
**UT, 84115-1289**
**Cell: 916-801-4756**
amravinworks@gmail.com

**EXHIBITS SHOWING THAT THE INFORMATION CONVEYED BY PATTY SHELDON, SECTION EIGHT VOUCHER SPECIALIST AT THE SALT LAKE CITY HOUSING AUTHORITY ARE MISGUIDING AND A WASTE OF TIME THAT THE PLAINTIFF AND FAMILY COULD USE TO RECOVER FROM THE SHOCKING EXPERIENCES THAT THEY HAVE CONTINUED TO SURVIVE IN THE STATE OF UTAH:**

Until December 2020, Plaintiff sought to relocate to the area of Park City, Utah in the wrong belief that perhaps there would be more separation of church and state by Contractors in that area. In addition, the Plaintiff considered a possibility of becoming

self-sufficient by selling her bronze products to Resort locations in Park City.   But, contrary to the misleading information provided by Section Eight specialist Patty Sheldon, the information given by Patty Sheldon to Kendal Lukrich (social worker at the Park City Christian Center) was inaccurate. In spite of the time waste and efforts lost in the exchanges, two more years have passed and the Plaintiff is still requesting relocation to a more productive area out of the State of Utah.

Dec 18, 2020,
5:37 PM

Kendal Lukrich
<kendal@ccofpc.org>

to me, Kendal

Hi there,

Ms. Sheldon states that the port process cannot begin until she receives your notice to vacate. She says that you can send in notice for three months from now, if needed. She states she needs that before she can send you a voucher to sign and port over to Housing Connect. Housing Connect will then take over as they also cover Summit County, whereas Salt Lake Housing Authority does not. Housing Connect will provide you with the amount of coverage for your voucher.

I hope that makes sense.

She was very nice and helpful.

Kendal

**Case Manager Jon Jackman from Housing Connect expressed on phone communications with Plaintiff that they neither had anything to do with Park City nor did Housing Connect have anything to do with the Section Eight Voucher produced by Patty Sheldon in the Salt Lake City Housing Authority.**



Patty Sheldon lied in writing and in personal conversations with authorized mental health representatives who appeared in her office seeking to clarify the confusing situation that the Plaintiff is being delivered into.

Patty Sheldon lying on record, in spite of her own signed contract as the responding Housing Authority.  In addition, Patty Sheldon expressed in writing to Plaintiff that she will not respond to phone calls from Plaintiff, but only in writing.

And yet Patty Sheldon continued not responding in writing to any of the Plaintiff's inquiries.

Jackie Rojas, Supervisor of Patty Sheldon at the Housing Authority of Salt Lake City refused to respond in writing or on the phone.

Per Definition:

*Human services are all about helping people find stability, and can include everything from providing for basic needs like food and shelter to offering guidance, counseling and substance abuse treatment with the goal of promoting self-sufficiency and happiness in people's lives.*

A careful review of the files submitted through the Plaintiff's efforts, not only to the office of the State of Utah Lieutenant Governor, but to Federal Agencies related to Human and Refugee Services that fund the Contractors implied in this case reveals that there is an intense activity of disinformation taking place, to which all the related officials in charge of stabilizing the services simply omit investigation and prophylactic intervention, for very questionable reasons that remain unanswered.

**Whitney Brickey**

Thu, Oct 28, 1:18 PM (13 days ago)

to
Shelly,
Ryan,
me

Good afternoon Mia,

We would like to clarify that your Section 8 Housing Voucher is provided by the Salt Lake City Housing Authority. Our agency, Housing Connect, provides Property Management for The HUB of Opportunity in which you reside, but we do not hold your subsidy voucher.

Please let us know if you have any further questions. Have a good day.

--

WHITNEY BRICKEY

Regional Property Manager

3595 S Main Street | Salt Lake City, UT 84115

wbrickey@housingconnect.org

P: (801) 284-4494 | F: (801) 284-4406

TDD: (801) 284-4407 | www.housingconnect.org

**For all the dishonest and fraudulent business dealings explained through this case, the Plaintiff demands an immediate HUD transfer with her refugee family out of the State of Utah zone.**

*Ana Maria Ravines de Schur*

**Ana Maria Ravines de Schur / 11/10/2021**

Thu, Oct 28, 2021
1:18 PM

Whitney Brickey

to
Shelly,
Ryan,

me

**Good afternoon Mia,**

**We would like to clarify that your Section 8 Housing Voucher is provided by the Salt Lake City Housing Authority. Our agency, Housing Connect, provides Property Management for The HUB of Opportunity in which you reside, but we do not hold your subsidy voucher.**

**Please let us know if you have any further questions. Have a good day.**

**--**

**WHITNEY BRICKEY**

**Regional Property Manager**

**3595 S Main Street | Salt Lake City, UT 84115**

**wbrickey@housingconnect.org**

**P: (801) 284-4494 | F: (801) 284-4406**

**TDD: (801) 284-4407 | www.housingconnect.org**

**DISCRIMINATORY EMAIL MESSAGES SENT TO THE PLAINTIFF BY PATTY SHELDON, SECTION EIGHT SPECIALIST IN CHARGE OF THE PLAINTIFF'S VOUCHER (THE PLAINTIFF HAS NEVER SEEN THIS CONTRACTOR IN PERSON OR HELD A FRIENDLY CONVERSATION WITH HER OVER THE PHONE).**

In her message, Ms. Sheldon explains that she preferred to hold written exchanges with Plaintiff, "so that everything is documented."

Sheldon doesn't explain how her office's arbitrarily discriminatory customer service lowers the quality of the provisions offered to a client, if she decides not to respond on the phone or in writing.

The advice given by Sheldon, that Plaintiff should abandon the Section Eight Contract if her case has not yet been ported out of the area, is wrong customer's support and also misleading. If Plaintiff would have followed that advice, she would have given up her Section Eight Voucher without having a certainty of the Port Out of the case to the next location.  Plaintiff is concerned that the office of Patty Sheldon is acting against the client's interests.

And all that is happening here is that the time in which the Plaintiff and her family should be taking care of more productive activities in a safer and more open minded area of the United States is being delayed through the confusing information that Ms. Sheldon provides in what appears to be ways of producing obstructionism that does not allow the clients to overcome the crisis they are facing.

After the fires of December 31, 2021 consumed the area of the State of Colorado where the Plaintiff was seeking an alternative living option, the Plaintiff had to organize new directions based on living experiences that she had in the past. She spent ten months of her life in the State of California after returning from interrogations at the USCIS of Rome, Italy.

In California, the ethnic minorities do not even dream of having to cope with the discriminating conditions that the Plaintiff and her family had to survive in the State of Utah. For this reason, the Plaintiff is requesting help in moving on to an HUD Housing Authority in the area around Manteca, in the state of California. Plaintiff suffers from Complex PTSD, which is being exacerbated by the confusing methods used by Ms. Patty Sheldon at the Salt Lake City Housing Authority in disorganizing the focus that the Plaintiff is able to devout to solve the problem, considering that the Plaintiff does not feel "safe" being handled by the xenophobic behavior of Ms. Sheldon's office.

*Ana Maria Ravines de Schur*

Ana Maria Ravines de Schur

 Gmail

Amravin de Schur <amravinworks@gmail.com>

---

**Backup of the Situation**

**Patty Sheldon** <psheldon@haslcutah.org>                                              Wed, Dec 23, 2020 at 9:14 AM
To: Amravin de Schur <amravinworks@gmail.com>
Cc: "ElizabethHa@valleycares.com" <ElizabethHa@valleycares.com>, Jackie Rojas <jrojas@haslcutah.org>, "Miller, Angela J (CRT)"
<angela.miller5@usdoj.gov>, "jonjackman@housingconnect.org" <jonjackman@housingconnect.org>, "kendal@ccofpc.org"
<kendal@ccofpc.org>, "mallen@hcmutah.org" <mallen@hcmutah.org>

Yes, you are correct that I didn't call you.  I feel that it is best to communicate via email, so everything is
documented.  Therefore, per our phone call today, I understand that you plan on contacting HUD once the
holidays are over to find out more information and guidance to find out if you must first give a written notice
vacate your current unit before I have you sign a voucher and port your paperwork to the new agency.  If I
misunderstand anything, please let me know.

Thank you and Happy Holidays,

Patty Sheldon
Lead Section 8 Specialist

1776 So. West Temple
Salt Lake City, Utah 84115
801.428.0567
801.487.3641-fax
*"To provide affordable housing
opportunities for our community"*
www.haslcutah.org

---

**From:** Amravin de Schur <amravinworks@gmail.com>
**Sent:** Wednesday, December 23, 2020 7:05 AM
**To:** Patty Sheldon <psheldon@haslcutah.org>
**Cc:** ElizabethHa@valleycares.com <ElizabethHa@valleycares.com>; Jackie Rojas <jrojas@haslcutah.org>; Miller,
Angela J (CRT) <angela.miller5@usdoj.gov>; jonjackman@housingconnect.org <jonjackman@housingconnect.org
>; kendal@ccofpc.org <kendal@ccofpc.org>; mallen@hcmutah.org <mallen@hcmutah.org>
**Subject:** Re: Backup of the Situation

For the record,

the from Ms. Sheldon offered phone call from December 21 never came through.

Happy Holidays.

Ana María Ravines de Schur

916.801.4756 - AMRAVINWORKS@GMAIL.COM

# ANA MARÍA RAVINES DE SCHUR

December 20, 2020

U.S. Dept. of Housing and Urban Development
ROCKY MOUNTAINS OFFICE
Fair Housing Hub
1670 Broadway,Denver, CO 80202-4801
Telephone (303) 672-5437 or 1-800-877-7353 Fax (303) 672-5026 • TTY (303)
672-5248 E-mail: Complaints_office_08@hud.gov

Ladies and gentlemen,,

The purpose of this letter is to express my concern related to the recent statements by HUD Specialist Patty Sheldon at the HUD Office in Salt Lake City, Utah. The following constitute my concerns.

In my porting process, HUD Salt Lake City officer Ms. Sheldon is proposing that I give notice of termination of the leasehold to the current landlord. The fact is, I do not have an alternate lease elsewhere.  Ms. Sheldon first indicated that I should give a notice, of a month in advance.  Then narrative extended up to three months. How may I give such notice without having received assurance that I will be granted a destination with regard to a new domicile?

The proceedings proposed by Ms. Sheldon demonstrate that her office is knowingly working in opposition to my best interests. The support that the HUD Program offers needs to be in one accord with regards to my need and my right to housing. The contradictory posture assumed by Ms. Sheldon comes across as if she is looking to enforce conflicting timelines by which my access will be nullified and i will be un-housed. Her approach to this situation is an extreme expression of discord with respect to the objectives of the HUD Housing Program. This program is designed to keep the client housed. But, Ms. Sheldon is working at cross purposes to this objective.

None of the foregoing reflects the purpose of the Federal Housing Program, and rather the proposed steps are in opposition to the clear objective of that program, which is to keep the client properly housed.

Sincerely yours,

Ana María Ravines de Schur

3848 S. WEST TEMPLE, UNIT 325 – SALT LAKE CITY, UTAH 84115

# Ana Maria Ravines de Schur

November 20, 2020

Whitney Brickey
Via Email: wbrickey@housingconnect.org

Dear Ms. Brickey,

I write as I have not been able to reach you on the phone.  I am a resident at "The Hub" located at 3848 S West Temple. I write to request a way to get our of the lease I am in, for the following reasons:

a.  I moved in July to the apartment number 325, without having seen it previous to the day I signed the lease and that's the first time I saw the apartment. On that day, after a horrific experience in the city of Provo, with legal trials surmounting against my peace of mind, I saw no other way out of that oppressive situation than taking wherever apartment Ms. Liz Garcia, case manager at the Holy Cross Ministries where I could move in.  After months of living in the apartment at The Hub, I feel claustrophobia. The living room feels like a trap, with no other windows than a small glass that cannot be opened. The glass views a gray backyard that resembles a carceral environment. I feel wrong in that living room,  which leaves me with only the bedroom to say at. I cannot work, concentrate or focus in that room, although I have very skilled duties that I must complete and cannot, because the room produces me anxiety and the desire to walk out of it.

b.  The only neighbor that lives besides my apartment appears to have mental problems. He yells in the middle of the night and screams to another person; he throws around heavy objects, so that in two occasions I had to call the police. I was in the wrong assumption that the man was yelling at his wife, or abusing someone, as his screaming appears to be directed to another person. But, recently, I found out that the man lives alone in that apartment.

c.  I fear to leave the apartment. The building feels like a prison, with incidents in which I entered the elevator to go down, and the person in there tells me that he saw me when I signed my lease, and as he continued to expand, he informed me that he just left prison, where he was sentenced for participating in a public shooting.

d.  The tenants in this building are not simple people. I feel that I do not have the capacity of dealing with mental health problems, because of my personal biography, which I don' t need to describe in this letter.  I have even been subject to direct aggressive encounters by two women who live in this building. I am afraid

from being exposed to such attacks in the place where I should feel safe but am not.  Their mental health condition is too much for me.

e.  For biographical reasons, I will need Trauma Therapy for a long time in my life experience.  The mental health services that I am dealing with in this area of the state are very compromised and I don't feel that they are of much help, as their director, a male named "Curtis", appears to have forbidden his employees to talk to me about the very nature of the problems that afflict me, because of his own conflicts of interests.  That is bad customer's service. I had to contact the Client's Advocate of that mental health organization several times, as their mental health service providers have been instructed to not talk to me about the nature of my problems, which leaves me with no healing options. The previously assigned mental health counselor dared to close my case without even establishing rapport with me as a client.  I don't know how to cope with such high levels of prejudice.

f.  I went on looking for opportunities to find a more "normal" culture in Utah. Fortunately, the most recent counselor I have at the Valley Behavioral Health Services is not from Utah. She has understood the nature of my conflicts. She supports my desire to distance myself from the very negative environment that I am in. In her letter, which I have included on page three for your information, I see her attempt to help me find a way out. She wrote to Ms. Patty Sheldon at the HUD Federal Program that helps me out in this crisis, but Ms. Sheldon cannot authorize my case to be ported to Park City, until I speak to you about my situation.

g.  I have been able to find therapy and case management in Park City, Utah, where the incidents of prejudice are lower, because of how the culture is shaped. I am under the conviction that Park City is just more cultivated in the direction of integral diversity than I will find anywhere else in the State of Utah.  I also see better opportunities to work in my skills, as in South Salt Lake I am finding myself isolated and unable to move forward.

Please help me find a way to get our of the current useless environment that I am in. Thank you for your consideration of my situation.

Sincerely yours,

Ana Maria Ravines de Schur

PS: I would wish that this letter be valid without my signature, since I am including authorized persons in the CC field. But, if you needed my signature, I am asking your manager Mr. Jon Hackman to please print my letter, that I may sign it at his office, and then he would be able to forward it to your office.

**HOUSING AUTHORITY OF SALT LAKE CITY**
1776 S WEST TEMPLE
SALT LAKE CITY, UT 84115
Phone: (801) 487-2161  *  Fax: (801) 487-3641

11/20/2020
t0082288


ANA  RAVINES DE SCHUR
3848 S WEST TEMPLE APT 325
SALT LAKE CITY, UT 84115


## Section 8 Housing Voucher Program - Notice of change to Lease and Contract

The contract dated 07/06/2020, entered into between the Owner, ATTN:  OFFICE HUB OF OPPORTUNITY, and the PHA, HOUSING AUTHORITY OF SALT LAKE CITY and the LESSEE ('FAMILY'), ANA  RAVINES DE SCHUR(t0082288) for the following described unit 3848S325 located at 3848 S WEST TEMPLE APT 325, SALT LAKE CITY, UT 84115 is amended as follows:

**The reason for this change is due to:**

☐ **REEXAMINATION**
    Annual Review of family income and/or composition.

☒ **INTERIM ADJUSTMENT**
    Interim change in family income and/or composition.

☒ **RENT ADJUSTMENT**
    The owner/agent request for a rent adjustment.

☐ **CHANGE IN FAMILY COMPOSITION**


| Adjustment in Payment | From | TO |
|---|---|---|
| HAP Payment | $0 | $935 |
| Tenant Rent | $0 | $0 |
| Total Rent to Owner | $0 | $935 |
| URP | $0 | $12 |

**Effective Date**
This change to the Housing Voucher Contract and/or Lease Agreement will be effective from 10/01/2020.  The next reexamination is due on 07/01/2021.


This change is presented to you in accordance with the terms and conditions of the Housing Voucher Contract and/or Lease Agreement and shall be attached to and made a part of your Housing Voucher Contract and/or Lease Agreement.  All other covenants, terms and conditions of the original Housing Voucher Contract and/or Lease Agreement remain the same.


To the Tenant Only
If you disagree with this decision, you may request an informal hearing.  If a hearing is desired, you must submit a written request to this office within 14 days of this notice or your right to a hearing will be waived.

**Caseworker:** PATTY SHELDON        **Phone:** (801) 428-0567



North Valley Unit
1020 S. Main Street
Salt Lake City, UT  84101

Patty Sheldon, Lead Section 8 Specialist
Dept. of Housing and Urban Development
1776 So. West Temple
Salt Lake City, Utah 84115

November 13, 2020

Dear Ms. Sheldon:

This letter is in support of Ana Maria Ravines de Schur moving her HUD grant to Park City, Utah.  Ms. Ravines de Schur has secured services in Summit County and believes she will not be the victim of discrimination or persecution there.  She does not feel safe in her current housing in Salt Lake City due to the neighborhood being dangerous.

I am her current therapist at Valley Behavioral Health and she has been our client since June, 2020. If you have any questions, feel free to contact me by email, at: elizabethha@valleycares.com

Kindly,

Elizabeth Hays, LCMHC
Clinical Therapist

# Porting process : Explained by Patty Sheldon (Housing Authority Section 8 Director Salt Lake City)

 Patty Sheldon  Dec 17, 2020

to me, kendal@ccofpc.org ⌄

Good Afternoon Ana,

I understand that The Hub I willing to let you out of the lease early, they just need written notice from you stating when you plan on moving.  This needs to be done before I can proceed with any other paperwork.  Once I receive a copy of the written notice you submit to The Hub then I will send you a voucher to sign and return.  Once that has been received, then I can send the portability paperwork to Housing Connect and the from there they will contact you to provide you with pricing and other information to port to Summit County.  I am not familiar at all with the program you called "Federal Housing Program".

Thank you,

Patty Sheldon

Lead Section 8 Specialist



HOUSING
AUTHORITY
of SALT LAKE CITY

1776 So. West Temple

Salt Lake City, Utah 84115

801.428.0567

801.487.3641-fax

*"To provide affordable housing*

*opportunities for our community"*

www.haslcutah.org

**NOTES:**

**Q: Why would the Salt Lake City Housing Authority Section Eight Specialist Patty Sheldon advice the Complainant to sign out of her Section Eight Voucher first, if it is her same office that manages the Voucher for Park City? Such is Bad Customer's Service. But why?**

**A: NEPOTISM runs high in Utah. Most vouchers and down payments are given silently to Mormons by the same Housing Authority HUD State Of Utah Contractors. This creates a society of racist discrimination where outsiders do not have equal access.**

# Response from " HOUSING CONNECT "

## The Hub of Opportunity  Inbox



 Jon Jackman  Nov 24, 2020
to me, Shelly, Jeanette



Ana Maria,

We have reviewed your request and supporting letter from your case manager at Valley Behavioral Health, to break your lease so that you may move to an area that best supports you.
Per our conversation, please submit to us in writing your 30 day notice to vacate the premises when you are ready to do so and we will let you out of the 12 month lease obligation.

Best Regards,


**Jon Jackman**

The Hub of Opportunity

Assistant Property Manager

3848 S West Temple I Salt Lake City, UT 84115

P: (801) 270-1338 I  jonjackman@housingconnect.org

F: (801) 583-0511 I TDD: (801) 284-4407

www.housingconnect.org



50 Years Building Connections

   

# BACKUP INFORMATION BY CASE MANAGER KENDALL LUKRICH, AFTER SPEAKING WITH HOUSING AUTHORITY DIRECTOR PATTY SHELDON



**Kendal Lukrich**  Dec 18, 2020

to me, Kendal ⌄



Hi there,

Ms. Sheldon states that the port process cannot begin until she receives your notice to vacate. She says that you can send in notice for three months from now, if needed. She states she needs that before she can send you a voucher to sign and port over to Housing Connect. Housing Connect will then take over as they also cover Summit County, whereas Salt Lake Housing Authority does not. Housing Connect will provide you with the amount of coverage for your voucher.

I hope that makes sense.

She was very nice and helpful.

Kendal



Kendal Reynoso Lukrich

435-709-5805

# INQUIRY TO SUPERVISOR JACKIE ROJAS, SALT LAKE CITY HOUSING AUTHORITY – NO RESPONSE

## Administrative Problems in Utah



 me  Dec 18, 2020

to Jackie, bcc: CCPC, Margarite, Angela ⌄  

Ms. Rojas,

I feel I am dealing with a composite of denial and manipulative activities that seem to come from the fact that I have compiled all the compromised activities of State of Utah officials who have continued harming my situation, in preparation for a court complaint.  Ms Sheldon does not ignore this problem.

Ms. Sheldon at the HUD Office is acting quite compromising. Why would she demand that I quit my apartment, before I have signed a lease? The Federal Agency does not support such an incoherent process.  The idea of HUD is to evade leading a client into homelessness. If I sign out of my current lease giving the thirty day notice that the administrator of my current apartment has offered, I would be trapped in a tense limbo, not having a new lease to move into.

Such poor advising is not representative for the Housing Authority. Ms. Sheldon is risking my safety by providing dangerously inaccurate information.

Please explain me the process to raise an administrative complaint against the disinformation that Ms. Sheldon is leading me into.

Ana Maria

•••

# INQUIRY TO PATTY SHELDON, SECTION 8 DIRECTOR

 **me**  Dec 18, 2020

to Patty, Jackie, bcc: CCPC, Angela ⌄



Ms. Sheldon,

I write to inquire once again about the proceeding that you are formulating. The following are contradictions on my information::

In your message, you are giving me instructions to file a notice to vacate the property where I am in now.

At the same time, the HUB Of Opportunity Management tells me to give them thirty day notice <u>after I signed the lease in the other apartment.</u>

I cannot give the management of The HUB thirty day notice without having obtained a move-in date from the new apartment complex.  This means, I must sign a lease before I can receive a move in date.  For this reason, your porting instructions are very incoherent at this time.

Your information contradicts the efforts of the Federal HUD Program, that takes care that I won't be homeless at any point of this porting process.

I have asked you to please offer me an opportunity to talk to you personally on the phone, because I am the Client and these are my own interests that are discussed. But, you never respond to my phone calls and I see you only returning phone calls to Case Managers who work for some of the non profit organizations I have authorized to speak with State Of Utah agencies.

Is there any particular reason why you should be reluctant to talk to me directly? If yes, could you please explain your reasons for omitting me from the communication process about my own situation?

Ms. Sheldon, please explain this confusion in a coherent manner, as the proceeding you are describing comes across as too contradictory to follow up safely.

I feel that I must ask your supervisor Ms. Rojas for clarity on this confusing situation.

Thank you so much for your attention to this matter.

Regards,

Ana María Ravines de Schur

•••

**HOUSING CONNECT MANAGER JON JACKMAN EXPLAINS AGAIN, THAT CLIENT DOES NOT NEED TO RESCIND THE HOUSING CONTRACT IN SALT LAKE CITY TO OBTAIN HOUSING IN PARK CITY.  THE SALT LAKE COTY HOUSING AUTHORITY HAS LIED NOT ONLY TO CLIENT, BUT TO CASE MANAGERS ABOUT THEIR JURISDICTION AND FUNCTION OF THE PORTING PROCESS. SECTION EIGHT SPECIALIST PATTY SHELDON KEEPS MISINFORMING ABOUT THE POSSIBILITIES OF THE FEDERAL HOUSING PROGRAM.**

 **Jon Jackman**  Dec 23, 2020

to Patty, me, ElizabethHa@valleycares.com, Jackie, Angela, kendal@ccofpc.org, mallen@hcmutah.org ⌄



Ana Maria,

This is why I have instructed you to turn in your 30 day written notice, once you are ready.
"Ready" would mean that you have found the new apartment in Park City that you intend to inhabit.
We absolutely do not want you to become homeless.  This would contradict my mission as a property manager.
You had informed me that you had a housing specialist in Park City assisting you in locating a new apartment?
Once you have found your new home and have submitted your 30 day notice, they will be able to begin the porting process.
You will need to make certain that the residence you have selected will meet the voucher requirements.  I am unfamiliar with Park City's housing options, but it is my understanding that the porting process needs to take place before you sign the new lease with the new residence as the unit needs to be inspected first by housing as well.

Hopefully this helps?

**Jon Jackman**

The Hub of Opportunity

Assistant Property Manager

3848 S West Temple l Salt Lake City, UT 84115

P: (801) 270-1338 l   jonjackman@housingconnect.org

F: (801) 583-0511 l TDD: (801) 284-4407

www.housingconnect.org



50 Years Building Connections

    

**RECENTLY, A NEW CASE MANAGER HAS BEEN ASSIGNED TO THE PLAINTIFF'S "CASE" BY VALLEY CARES. THE PLAINTIFF HAS BEEN WITHOUT CASE MANAGEMENT AND WITHOUT A COUNSELOR SINCE LIZ HAYS LEFT HER OFFICE IN MAY 2021.**

**THE PLAINTIFF NEEDS THIS INTERVENTION, BECAUSE SHE IS NOT ABLE TO TALK TO THE SALT LAKE CITY HOUSING AUTHORITY IN A POSITIVE EXCHANGE. AND THE SITUATION IS URGENT. A SOLUTION HAS TO BE MET AND THE FAMILY TRANSFERRED TO A SAFER AREA.**



Shelby Woolf  Feb 23

to me, Patty, Ryan

Hi Ms. Sheldon,

I am Shelby, Ana Maria's case manager at VBH.
We would appreciate any information you can provide about modifying Ana Maria's Section 8 voucher or about transferring or porting her voucher to a new state.

My office number is 801-708-7767 if you would prefer to talk over the phone.

Thank you

*Shelby Woolf*

Certified Case Manager

SouthValley Outpatient Program

Valley Behavioral Health

3809 W 6200 S Kearns, UT 84129

801-263-7225

To whom it may concern:

The purposes of this letter are to present concerns observed in psychotherapy, case management, and general reports made by my client, Ana María Ravines De Schur (DOB: 1/23/57)

I have been providing ongoing psychotherapy to the client since her return to the State of Utah in 2019. Treatment and support were initially sought following a series of complex scenarios and reported injustices negatively impacting her immigration process.

Though the process of restoring legal rights should be straight forward for legal immigrants, after two years of fighting for these rights, the identified client reports still being unable to find health coverage protecting her from poor management. The health company that covers her case has not appeared to be willing to accompany her through the problems that have been created by third parties.

The mental health organization that covers her legally in the State of Utah is reported to offer accompaniment in their cases through court proceedings; however, this benefit has been denied to the client.

The client has spent a great deal of energy to reach this point in her integration process compiling her information in a lengthy court document that must go to a Utah Court for the corresponding rectification as contained in her claims.

The State of Utah has been reported to have blocked her access to all services, even to unemployment or to COVID 19 payments, leaving her without the most necessary means to overcome the crisis that she did not create. This has been especially problematic as the client has continued to be out of work, has not received unemployment payments, and has been unable to purchase a computer which would allow for far greater employment opportunity as well as improved general functioning in the current day and age.

The client has been diagnosed with CPTSD (complex post traumatic stress disorder) following clinical evaluation of impacts of traumas including sexual and labor trafficking, manipulation, and neglect by multiple agencies including several connected to local government.

The abuses the client has faced combined with the unprofessional and arguably unethical behaviors of these varied institutions and others not listed above have resulted in decreased functioning of the client as seen in increased symptoms of insomnia, fatigue, anxiety, and depressive presentations. This has compounded as a significant burden on her general mental health and her process of healing.

For the reasons above, I recommend the legal proceedings be expedited so a solution may be given to the long-lasting series of abuses that continue to be defused in the presence of surmounting evidence that is being suppressed against her interests.

Date: May 17, 2021

Joseph Dennis, MA, LCMHC
JoeDennis.counsels@gmail.com
(385)722-4532